**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**BECKLEY DIVISION**

**STEVEN RAY LEACH,**

      **Plaintiff,**

**v.**                                                                   **Civil Action No. 5:18-cv-00948**

**NANCY A. BERRYHILL,**
**ACTING COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before this Court is Plaintiff's Memorandum in Support of Judgment on the Pleadings (ECF No. 9) and Defendant's Brief in Support of Defendant's Decision (ECF No. 10). This is an action seeking review of the decision of the Commissioner of Social Security denying Claimant's application for disability insurance benefits (DIB) under Title II and supplemental security income (SSI) under Title XVI of the Social Security Act.

### Background

Claimant, Steven Ray Leach, filed applications for DIB and SSI approximately on June 20, 2014. Claimant alleged disability beginning December 30, 2012. The claims were denied initially on December 15, 2014, and upon reconsideration on April 3, 2015. Claimant filed a request for a hearing on May 5, 2015. A video hearing was held on April 17, 2017. Claimant appeared for the hearing in Mt. Hope, West Virginia, and the Administrative Law Judge presided over the video hearing from Charleston, West Virginia. The Administrative Law Judge (ALJ) denied Claimant's applications on May 2, 2017. Subsequently, Claimant sought review of the ALJ's decision by the

1

Appeals Council.  The Appeals Council denied Claimant's request for review on March 20, 2018.

Thereafter, Claimant brought the present action seeking judicial review of the administrative

decision pursuant to 42 U.S.C. 405(g).

Standard of Review

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a

disability.  *See Blalock v. Richardson*, 483 F.2d 773, 774 (4th Cir. 1972).  A disability is defined

as the "inability to engage in any substantial gainful activity by reason of any medically

determinable impairment which can be expected to last for a continuous period of not less than 12

months . . . ."  42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of

disability claims.  20 C.F.R. §§ 404.1520, 416.920 (2018).  If an individual is found "not disabled"

at any step, further inquiry is unnecessary.  *Id.* §§ 404.1520(a), 416.920.  The first inquiry under

the sequence is whether a claimant is currently engaged in substantial gainful employment.  *Id.* §§

404.1520(b), 416.920.  If the claimant is not, the second inquiry is whether claimant suffers from

a severe impairment.  *Id.* §§ 404.1520(c), 416.920.  If a severe impairment is present, the third

inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1

to Subpart P of the Administrative Regulations No. 4.  *Id.* §§ 404.1520(d), 416.920.  If it does,

the claimant is found disabled and awarded benefits.  *Id.*  If it does not, the fourth inquiry is whether

the claimant's impairments prevent the performance of past relevant work.  *Id.* §§ 404.1520(e),

416.920.  By satisfying inquiry four, the claimant establishes a *prima facie* case of disability.  *Hall*

*v. Harris,* 658 F.2d 260, 264 (4th Cir. 1981).  The burden then shifts to the Commissioner, *McLain*

*v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether

the claimant is able to perform other forms of substantial gainful activity, considering claimant's

2

remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920 (2017). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he has not engaged in substantial gainful activity since December 30, 2012, the alleged onset date (Tr. at 31). Claimant met the insured status requirements of the Social Security Act through March 31, 2019. (*Id.*) Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments: degenerative disc disease of the lumbar spine status post L5-S1 fusion and report of degenerative disc disease of the left elbow. (*Id.*) At the third inquiry, the ALJ concluded that Claimant did not have an impairment or combination of impairments that met or medically equaled the level of severity of any listing in Appendix 1 (Tr. at 34). The ALJ then found that Claimant has a residual functional capacity to perform sedentary work, with the following non-exertional limitations: He cannot operate foot controls. He should be afforded a sit/stand option, allowing for a change of positions after every hour for up to two minutes. He can occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl. He can frequently reach in all directions including overhead reach, handle and finger with the left non-dominant upper extremity (Tr. at 35). Under the fourth inquiry, the ALJ found that Claimant is unable to perform any past work (Tr. at 40). Under the fifth inquiry, the ALJ found that Claimant can perform jobs that exist in significant numbers in the national economy such as document preparer, folder and food sorter (Tr. at 42). On this basis, Claimant's application was denied (Tr. at 42-43).

3

<u>Scope of Review</u>

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence.  In *Blalock v. Richardson*, substantial evidence was defined as:

> [E]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence.  *Hays v. Sullivan,* 907 F.2d 1453, 1456 (4th Cir. 1990).  Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974).

A further review of the record reveals the decision of the Commissioner in this case is supported by substantial evidence.

<u>Claimant's Background</u>

Claimant was born on September 19, 1972 (Tr. at 60).  He did not graduate high school. (*Id.*)  At the time of the hearing, Claimant lived with his wife and their 17 year old daughter (Tr. at 65).

Medical Record

The medical record has been adopted, as set out in the Claimant's Memorandum in Support of Judgment on the Pleadings, Defendant's Brief in Support of Defendant's Decision and the ALJ's decision[1] to the extent as follows:

On June 13, 2012, Claimant presented to the Emergency Room (ER) at Raleigh General Hospital complaining of low back pain that started two weeks earlier when he got up from the couch (Tr. at 654). On examination, Claimant was alert and appeared well, had pain at five degrees on both sides during a straight leg-raising test, but normal motor strength, normal sensation, normal reflexes, and a normal gait (Tr. at 655). A lumbar spine x-ray revealed degenerative disc disease at L5-S1 (Tr. at 659).

On August 3, 2013, Claimant returned to the ER at Raleigh General Hospital and complained of back pain (Tr. at 622). On examination, he was alert and appeared well.  He had decreased range of motion in his back and muscle spasm, but normal motor strength, sensation, and gait. (*Id.*)  Claimant was diagnosed with acute or chronic back pain and discharged. (*Id.*)

Claimant had a CT of his lumbar spine on February 28, 2014, which revealed moderate to severe disc disease and neuroforaminal narrowing at L5-S1 with some contact with exiting nerve roots and a broad-based protrusion at L4-5 without significant stenosis or neuroforaminal narrowing (Tr. at 607). On March 13, 2014, Claimant returned to the ER with complaints of back pain, and, on examination, he had tenderness in his back and on range of motion, but normal motor strength (Tr. at 587).

---

[1] When the Appeals Council denied Claimant's review of the ALJ's decision, the ALJ's decision became the final decision of the Commissioner of Social Security.  Therefore, any reference to the ALJ's decision in this Proposed Findings and Recommendations is a reference to the Commissioner's decision.

Claimant was examined by Douglas M. Bennett, D.O., in the ER at Charleston Area Medical Center on March 14, 2014, for complaints of low back pain that had been worsening for one month (Tr. at 694). On examination, Claimant was alert and oriented x 3, had no obvious musculoskeletal deformity or fracture, palpable pulses and no focal deficits (Tr. at 695). An x-ray revealed moderate degenerative joint disease at L5-S1. (*Id.*) He was assessed with chronic low back pain. (*Id.*)

On April 4, 2014, Claimant returned to the ER at Charleston Area Medical Center and reported low back pain for three and a half weeks (Tr. at 689). He reported numbness and tingling down both legs, and difficulty walking.  (*Id.*) On examination, he had no deformities, cyanosis, or edema and was intact neurologically. An MRI revealed no disc herniation; no spinal canal stenosis; no cauda equina syndrome; a normal conus medullaris; no fractures; some degenerative changes at L3-L4 with a minimal annular bulge; degenerative changes at L4-L5, and a disc bulge with facet hypertrophy, but no focal disc herniation; and normal paraspinal soft tissue structures (Tr. at 690). William N. Payne, M.D., indicated that Claimant had degenerative changes, but no acute abnormalities from his lumbar spine. (*Id.*) He was given pain medication and a recommendation to follow up in the clinic.

Claimant returned to the ER at Charleston Area Medical Center on April 12, 2014, and reported a four-month history of debilitating back pain with difficulty walking (Tr. at 685). Claimant reported pain radiating down both legs into his feet.  (*Id.*)  Claimant stated that he had urinated on himself several times.  (*Id.*)  On examination, Claimant was in no distress; had no clubbing, cyanosis, or edema in his extremities; full (5/5) strength in all extremities; a non-antalgic gait; normal heel-to-toe walk, heel walking, and toe walking; a negative straight-leg raising test; no neurological deficits; intact reflexes; and non-pathologic bilateral lower extremities (Tr. at 686).

Claimant was assessed with chronic back pain present for four months, but no signs of cauda equina. The treating physician, Leslie Michael Peterson, D.O., indicated that Claimant was neurologically intact and could walk with a non-antalgic gait. (*Id.*) He was treated with medications, and advised that there was no emergent need for surgery. (*Id.*)

On April 22, 2014, Claimant was evaluated by Charles Shuff, M.D., for complaints of back pain and radiculopathy (Tr. at 803). He reported a discectomy in the distant past that had been stable for a period of time. (*Id.*) On examination, Claimant was in a fair amount of discomfort. His strength was even, although he did "not give a good effort" on examination (Tr. at 804). Claimant had positive tension sign bilaterally, tenderness in his lumbar spine, and light touch discrepancy in the L5 distribution bilaterally. An MRI revealed neuroforminal narrowing at L5-S1 and advanced degenerative changes at the disc level, but no malalignment. He was assessed with degenerative disc disease in the lumbosacral spine. Dr. Shuff recommended treatment with injections or surgery, and Claimant indicated that he did not want a temporary fix and was willing to proceed with surgery (Tr. at 805).

Claimant was examined on April 24, 2014, at CAMC outpatient care center for complaints of low back pain that he rated as a nine on a ten-point scale (Tr. at 669). On examination, Claimant had weakness in both legs, but no edema, and a normal neurological examination including intact sensation and normal reflexes (Tr. at 666). The treating doctor assessed low back pain with radiculopathy, but indicated that cauda equine syndrome had been ruled out, and that an MRI revealed degenerative disc disease in L5-S1, but no disc bulge, nerve compression, or spinal cord compression (Tr. at 670).

On May 12, 2014, in the ER at Charleston Area Medical Center, Claimant reported experiencing tenderness in the low back and demonstrated a positive straight leg raise on the right

7

at 30 degrees (Tr. at 683). On June 5, 2014, Dr. Shuff performed posterior lateral interbody fusion surgery including decompression and preparation of the disc and the disc interspace, removal of disc complete bilateral facetectomies L5-S1 with associated cage application x2 with pedicle screw placement bilaterally at L5 and S1 and longitudinal rods (ECF No. 788).

Claimant was discharged on June 13, 2014, and was restricted from work for three months, restricted to no driving while on pain medications, and restricted to lifting no more than 10 pounds (Tr. at 789).

On June 30, 2014, Claimant returned for a post-surgical examination with John H. Schmidt, III, M.D., who indicated that Claimant was neurologically stable, and had no new weakness, tingling, or numbness in the extremities (Tr. at 785). On examination, Dr. Schmidt found that Claimant was in a moderate degree of distress and used a walker, but could walk independently and heel and toe walk (Tr. at 786). Dr. Schmidt recommended a gradual increase in activity, but that Claimant should avoid dangerous physical conditions, heavy labor, and unprotected heights (Tr. at 785).

On August 19, 2014, during a follow-up examination with Dr. Shuff, Claimant reported that he was pleased with his progress (Tr. at 780). Dr. Shuff noted that Claimant "has done very well" post-surgery and was ambulating well. (*Id.*) On examination, Claimant's alignment was anatomic, and his strength, sensation and motor function were even and equal bilaterally without discrepancy. (*Id.*) Dr. Shuff stated that Claimant was stable (Tr. at 781).

On September 30, 2014, during a follow up examination with Dr. Shuff, Claimant reported back pain, stiffness, and numbness and he was walking with a cane (Tr. at 811). He also reported being discouraged because he continued to require opioid therapy for pain management. (*Id.*)

During an examination on October 30, 2014, Claimant reported that he was still having pain despite the surgery (Tr. at 806). On examination, Claimant's strength, sensation and motor function were even, although Dr. Shuff reported that Claimant gave "poor muscular effort." (*Id.*) Claimant had symmetric reflexes, no clonus, no spasticity, and no joint contractures. An MRI showed some cerebrospinal fluid (Tr. at 809). Dr. Shuff recommended an electromyography test (Tr. at 807).

On December 8, 2014, Claimant presented to Beckley Hospital with complaints of back pain (Tr. at 765-766). On examination, Claimant had spasms in his lower back, but normal ambulation and could walk without assistance but with some difficulty (Tr. at 767).

On January 15, 2015, Claimant returned to Dr. Shuff (Tr. at 815). At that time, Dr. Shuff indicated that surgery had been "wildly successful technically" for Claimant, but that he continued to have the same pre-operative complaints. (*Id.*) On examination, Claimant had some paraspinal tenderness, but otherwise, his strength, sensation, and motor function were symmetric (Tr. at 815). Dr. Shuff noted that the electromyography test revealed no evidence of a sensory, polyneuropathy or radicular component (Tr. at 816). Dr. Shuff stated:

> I do not have a definitive answer for continued complaint in this patient. He has persistent numbness, tingling, paresthesia despite my best efforts. Continue him on opioid therapy. He cannot come off this medication. I am hopeful that I can refer him to pain management for potential opioid pump insertion/trial or a spinal cord stimulator trial in the hopes that would improve his quality of life and function. His posterior spinal fusion with instrumentation L5-S1 is going quite well radiographically but not clinically (Tr. at 817).

On February 22, 2015, Claimant returned to the ER with complaints of nausea and vomiting (Tr. at 705). On examination, he had no tenderness in his extremities and could move both his upper and lower extremities. (*Id.*)

On March 31, 2015, Claimant presented to Beckley Hospital with complaints of pain in his right hip and flank, right groin and back (Tr. at 729). An examination revealed that he was in no distress. Claimant had active range of motion of the upper and lower extremities. He did have significant limitations on flexion of both hips. Claimant experienced pain on palpation in the center of the spine as well as the right of midline, lower latoral musculature of the LS spine (Tr. at 731). An MRI of Claimant's spine revealed no fracture and good alignment (Tr. at 733).  The MRI reflected narrowed disc spaces at L3-4 and L5-S1 with degeneration, and some bulging at L3- 4. There was no disc protrusion at L4-L5 level. (*Id.*)

On March 10, 2015, Claimant was examined by Surayia T. Hasan, M.D., to establish a primary care relationship (Tr. at 739). Claimant reported "constant back problems" and indicated that he had surgery in June 2014 without any improvement (Tr. at 740). On examination, Claimant limped on the right; had anterior flexion to 70 degrees; sideward to 10 degrees; limited straight leg raise to 30 degrees; and tenderness over the lumbosacral spine, but normal muscle power, normal reflexes, and intact sensation (Tr. at 741-742). Dr. Hasan indicated that Claimant should "go on a reducing diet, try  to walk and gradually increase his activities" (Tr. at 742).  Dr. Hasan gave Claimant a back brace, capsaicin patches to use on his back twice a day and analgesic cream. (*Id.*)

On March 24, 2015, Claimant returned to Dr. Hasan and reported that he was not feeling better (Tr. at 743). On examination, Claimant was "very tender over the lumbosacral spine" and movements of his spine were painful (Tr. at 745).  On April 7, 2015, Claimant returned for a follow-up visit with Dr. Hasan (Tr. at 747).  Claimant reported that his back was still bothering him and he was experiencing pain during urination (Tr. at 748).  Dr. Hasan noted that Claimant was limping (Tr. at 749). Dr. Hasan referred Claimant to physicians to rule out cauda equina syndrome, a condition when the bundle of nerves below the end of the spinal cord is damaged, and

10

for a spinal cord stimulator (Tr. at 750).

On May 8, 2015, Claimant returned to Dr. Shuff, and indicated that he was working on getting off of opioids, and had been accepted into a detox program (Tr. at 829). Dr. Shuff requested a neurology evaluation based on Claimant's intermittent numbness into his lower extremities (Tr. at 831).

On July 1, 2016, an MRI revealed fatty marrow changes in L5; dessication of intervertebral discs at L3-L4 and L4-5; disc space narrowing, mild at L3-4 and severe at L5-S1; mild posterior facet joint degenerative changes at L2-L3 and L3-L4; neuroforaminal narrowing, mild on right and moderate on left at L3-L4, and moderate to severe at L4-5 (Tr. at 861). On September 19, 2016, Claimant began treatment in a suboxone program for opioid dependence at the Stanaford Medical Clinic (Tr. at 865-866).

<u>Residual Functional Capacity</u>

On approximately December 8, 2014, State agency consultant, Rabah Boukhemis, M.D., reviewed the medical evidence and opined that Claimant could lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk for six hours in an eight-hour day; sit for about six hours in an eight-hour day; frequently balance, stoop, and kneel; occasionally crouch and crawl; and should avoid concentrated exposure to extreme cold and heat, vibrations, fumes, and hazards (Tr. at 222-223).

On March 21, 2015, State agency consultant, Subhash Gajendragadkar, M.D., reviewed the medical evidence and opined that Claimant could lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk for four hours in an eight-hour day; sit for about six hours in an eight-hour day; occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds;

frequently balance, stoop, and kneel; occasionally crouch and crawl; should avoid concentrated exposure to extreme cold and heat, vibration, fumes, and hazards; and should avoid unsupported heights (Tr. at 239-240).

### Claimant's Testimony

Claimant testified that he saw his primary care physician for suboxone as treatment for his opioid addiction (Tr. at 58-59). Claimant testified that he has undergone two surgeries on his back. (*Id.*) Claimant testified that he did not graduate high school and he did not have a general education diploma (GED) (Tr. at 60). He was unsure if he last completed the tenth or eleventh grade. Claimant testified that he attended some special education or learning disability classes. (*Id.*)

Claimant testified that he could not maintain full-time employment because he hurts all the time (Tr. at 61). He stated that he "can't sit for very long" and needs to get up and walk. (*Id.*) He testified that after getting up, he needs to sit down again after "a little while" (*Id.*) He stated that his left leg jerks and he often falls. Claimant testified that he falls due to his back. Claimant stated that he alternates between applying heat and ice on his back for pain (Tr. at 62). He testified that he takes suboxone and Tylenol. (*Id.*)

Claimant stated that he sometimes wears a back brace, however, if he is not wearing his back brace he will sometimes use a cane. (*Id.*) Claimant testified that the cane was not prescribed to him. Claimant stated that he could walk for approximately 10 or 15 minutes at a time before needing to sit down (Tr. at 65). Claimant testified that he felt a pulling in his back when lifting or carrying something (Tr. at 66). Claimant stated that he used a motorized cart to go grocery shopping with is wife about twice a month. (*Id.*) He stated that he did not perform household chores or yardwork and only drove short distances (Tr. at 67). Claimant testified that he is forgetful (Tr. at 61).

<u>Vocational Expert's Testimony</u>

The Vocational Expert (VE) testified that an individual the same age as Claimant with the same education and work experience as Claimant, and with the same residual functional capacity restrictions as Claimant, could perform work as a document preparer, folder and food sorter (Tr. at 70-71).   However, if the same individual's sit/stand limitation were changed to "at will," the VE testified the individual's at will sit/stand limitation "might interfere with an individual's ability to attend to tasks" (Tr. at 71).  The VE testified that based on her experience, employers would not tolerate an employee who was "off task" more than 15% of the time (Tr. at 72).

Claimant's counsel asked the VE if the sedentary jobs she previously stated the individual could perform would be impacted by a limitation that the individual could occasionally use his/her left upper extremity for reaching, including overhead, handling and fingering (Tr. at 73).  The VE testified that there would be no work for someone with that limitation.  (*Id.*)

<u>Claimant's Challenges to the Commissioner's Decision</u>

Claimant argues that the ALJ erred in his step three analysis when he summarily found that Claimant did not meet or equal Listing 1.04, without comparing Claimant's evidence to the listing criteria (ECF No. 9).   Claimant asserts that the ALJ failed to compare Claimant's "actual symptoms" to the listing criteria in "more than a summary way." (*Id.*)  Claimant asserts that ALJ provided a recitation of the criteria for the listing he considered but declined to provide any analysis of the medical evidence he considered under the criteria. (*Id.*)

In Response, Defendant asserts that substantial evidence supports the ALJ's finding that Claimant failed to establish that he met all the criteria of Listing 1.04 (ECF No. 10).  Defendant

13

states that Claimant "bears a heavy burden at step three which requires that a Claimant prove that he met all of the criteria of a listed impairment." (*Id.*)

Discussion

The Listings, 20 C.F.R. pt. 404, subpt. P., app.1, are a regulatory device used to streamline the decision-making process by identifying those claimants whose medical impairments are so severe that they would be found disabled regardless of their vocational background.   20 C.F.R. §§ 404.1525(a), 416.925(a); *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). The medical criteria defining the listed impairments are appropriately set at a higher level than the statutory standard for disability. *Zebley*, 493 U.S. at 528-532. To be found presumptively disabled, a claimant must show that all of the criteria for a listing have been met. 20 C.F.R. §§ 404.1525(c)(3), 416.925(c)(3); *Zebley*, 493 U.S. at 530.   An impairment that meets only some of the criteria for a listed impairment, "no matter how severely, does not qualify."   *Zebley*, 493 at 530. It is a claimant's burden to present evidence that an impairment or combination of impairments meets or equals a listed impairment. 20 C.F.R. §§ 404.1526, 416.926; *Zebley*, 493 U.S. at 531.

Listing 1.04

In order to meet Listing 1.04A or 1.04C, the listings that Claimant alleges he meets, a claimant must demonstrate a disorder of the spine that results in compromise of a nerve root or the spinal cord with either: (a) evidence of nerve root compression as characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss, and, if there is involvement of the lower back, a positive straight leg-raising test (sitting and supine); or (b) lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic radicular pain and weakness, and resulting in an

14

inability to ambulate effectively (defined in § 1.00B(2)(b) as "an extreme limitation of the ability to walk . . . defined generally as having insufficient lower extremity functioning to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities"). 20 C.F.R. pt. 404, Subpt. P, App. 1, § 1.04(A), 1.04(C).

Claimant asserts that the ALJ failed to consider "probative evidence" that support a finding that his back impairment would meet or equal Listing 1.04. Specifically, Claimant points to Dr. Shuff's office notes dated April 22, 2014, which states that Claimant went to the ER with complaints of difficulty walking and ambulating and being frustrated with his history of experiencing these difficulties (Tr. at 803). Additionally, Claimant points to Dr. Shuff's office notes dated May 27, 2014, that reflect that Claimant has "Bilateral L5 radiculopathy secondary to severe foraminal stenosis" (Tr. at 805). Dr. Shuff recommended that Claimant receive injection management or surgical treatment. (*Id.*) Further, Claimant references office notes by Dr. Shuff that reflect that Claimant continued to complain about pain after receiving surgical treatment (ECF No. 9).

Although Claimant's Memorandum in Support of Judgment on the Pleadings aptly references medical record of evidence, he did not establish that his back impairment met all of the requirements of Listings 1.04A and 1.04C. No nerve root compression, spinal cord compromise, atrophy, significant deficit in motor function or range of motion and positive bilateral straight-leg raises in both the seated and supine positions were established, therefore, Claimant failed to meet his burden of demonstrating that he met or medically equaled Listing 1.04A.

Likewise, in regard to Listing 1.04C, the record of evidence does not establish that Claimant had lumbar spinal stenosis resulting in pseudoclaudication. Additionally, the record of evidence did not establish that Claimant had an extreme limitation in his ability to walk such that

15

he required the use of a hand-held device that limited the functioning of both of his upper extremities. It is reflected in the record of evidence that at times Claimant had a normal gait and that he could heel and toe walk, heel walk and toe walk. Although Claimant used a cane, he failed to establish that he had an extreme limitation in his ability to walk such that he required the use of a hand-held device that limited the functioning of both of his upper extremities. Therefore, Claimant failed to meet his burden of demonstrating that he met or medically equaled Listing 1.04C.

The ALJ's decision discusses Listing 1.04. The ALJ specifically lists the criteria Claimant failed to establish as follows:

> [T]he requirements of listing 1.04 are not met because there was no significant and persistent nerve root compression. There was no spinal cord compression. There was no fracture. There was no spinal arachnoiditis. There was no lumbar spinal stenosis resulting in pseudoclaudication. There was no significant atrophy, significant deficit in motor function or range of motion, or persistent positive straight leg raise bilaterally in the seated and supine position. The claimant did not have an inability to ambulate effectively (Tr. at 35).

The ALJ discussed the criteria necessary to meet the listings although he did not specifically label every criteria by paragraph A or C. Additionally, the ALJ listed the criteria Claimant failed to demonstrate for either Listings 1.04A or 1.04C. However, Claimant argues that the ALJ failed to provide any analysis of the medical evidence he considered under the criteria. Claimant cites to *Radford v. Colvin* and *Fox v. Colvin* as support for his position that the ALJ's step three finding was inadequate and conclusory (ECF No. 9).

Claimant's reliance on *Radford v. Colvin* and *Fox v. Colvin* is misplaced. The court in *Radford* remanded the case because the record contained "probative evidence strongly suggesting that [the claimant] me[t] or equal[ed a Listing]." *Radford*, 734 F.3d at 295. The facts in this

case differ from *Radford* because they do not "strongly suggest" that Claimant met or equaled Listings 1.04A or 1.04C. More over, the decisions in *Radford* and *Fox* do not negate Claimant's burden of proving that he is disabled at step three in the sequential evaluation process.

This District Court has previously rejected arguments calling for the formulaic and narrow application of *Radford* and *Fox* that Claimant asserts. *See Johnson v. Colvin*, No. 2:17-1608, 2018 WL 1096463 at *19-28 (S.D.W. Va. Feb. 1, 2018), adopted by 2018 WL 1095581 (S.D. W. Va. Feb. 28, 2018) (Copenhaver, J., rejecting similar argument raised by Plaintiff's counsel); *Six v. Colvin*, No. 3:15-cv-14377, 2016 WL 7040850, at*3 (S.D.W. Va. Dec. 1, 2016) (Chambers, C.J., rejecting similar argument raised by Plaintiff's counsel, and noting that the Court may consider explanations and discussions elsewhere in the record to support the listings analysis); *Marcum v. Berryhill*, No. CV 16-2297, 2017 WL 1095068, at *3-7 (S.D.W. Va. Mar. 23, 2017) (Copenhaver, J., distinguishing *Radford* and *Fox* where the ALJ's decision as a whole supported the listings analysis); *Glenn v. Colvin*, No. 3:14-25969, 2016 WL 1178783, at *3 n.4 (S.D.W. Va. Mar. 24, 2016) (Chambers, C.J., affirming the ALJ's decision where the decision was not "devoid of reasoning" regarding the listing); *Flesher v. Colvin*, No. 2:14-cv-30661, 2016 WL 1271511, at *3-4, 7-8 (S.D.W. Va. Mar. 31, 2016) (Johnston, J. rejecting Plaintiff's argument, and noting that "[w]here a court is able to determine that the ALJ's step three conclusion is supported by substantial evidence, the Commissioner's decision must be upheld"). Therefore, the ALJ's decision is supported by substantial evidence.

<u>Conclusion</u>

For the reasons set forth above, it is hereby respectfully **RECOMMENDED** that the presiding District Judge **DENY** the Plaintiff's Memorandum in Support of Judgment on the Pleadings (ECF No. 9), **GRANT** the Defendant's Brief in Support of Defendant's Decision (ECF

No. 10), **AFFIRM** the final decision of the Commissioner and **DISMISS** this matter from this Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Judge Irene C. Berger. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Berger and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

Enter: May 24, 2019

Dwane L. Tinsley
United States Magistrate Judge

18